RECEIVED
SDNY PRO SE OFFICE

2021 MAY 17  AM 9: 49

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **OSCAR PALMER** | **CIVIL ACTION** |
| **Plaintiff** | **Case #:** _____ |
| **V.** | **Complaint for Injunctive relief and Declaratory Damages** |
| **UNITED STATES OF AMERICA** | |
| **UNITED STATES MARSHALS SERV.** | **Request for Attorney**<br>**Convert to Class Action Status** |
| **U.S. DIST COURT, SOUTHERN**<br>**DISTRICT OF NEW YORK** | **Demand for Jury Trial** |
| **CHIEF JUDGE COLEEN McMAHON** | **Constitutional Challenge** |
| **U.S. DEPARTMENT OF JUSTICE** | **Applicable Statutes** |
| **NJ GOVERNOR PHIL MURPHY** | **42 USC. § 1983, 1985, 1986, Bivens Action** |
| **COUNTY OF ESSEX, NJ** | **5 USC § 702 under federal question jurisdiction 28 USC § 1331** |
| **DIRECTOR ALFARO ORTIZ** | **42 USC. § 2000bb-2000bb-4 Religious Freedom Rest. Act** |
| **WARDEN GUY CIRELLO** | **42 USC § 2000cc-2000cc-5 RLU & Institutionalized Persons Act** |
| **CFG MEDICAL SERVICES** | **28 USC § 1346 Federal Tort Claims Act (under 28 USC § 1402)** |
| **NY GOVERNOR ANDREW CUOMO** | **18 USC § 1964 Civil RICO** |
| **Defendants** | **N.J.S.A. 10:6.-2 New Jersey Civil Rights Act** |



**Applicable Injunction Statutes**

**28 USC § 1651 All Writs Act**

**18 USC § 1361 Action to Compel an officer of US to Perform Duty**

**Applicable Jurisdiction Statutes**

**28 USC. § 1367 Supplemental Jurisdiction**

**28 USC § 1332 Diversity of Citizenship**

**28 USC § 1331 Federal Question Jurisdiction**

## SECTION 1: JURISDICTION

**1.**   This Amended Civil Rights Complaint pursuant to 42 U.S.C. § 1983, 1985, 1986, Bivens

Action as per ***Bivens v. Six Unknown Named Agents***, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d

619 (1971), N.J.S.A. 10:6-2.  A Constitutional Challenge is being sought pursuant to Fed. R. Civ.

P. 5.1. Monetary and Quo Warrants relief is being sought and writs pursuant to 28 U.S.C. § 1651

and Fed. R. Civ. P. 65.  Jurisdiction is under Diversity and Federal Question 28 U.S.C. § 1331,

1332.

**2.**   The United States is a defendant under 28 U.S.C. § 1346.

**3.**   Agencies named are additionally a defendant under 5 USC § 702 under federal question

jurisdiction 28 USC § 1331.

**4.**   Judge(s) named are a defendant under Bivens Action and the act(s) under question fall



outside of judicial immunity as defined in ***Stump v. Sparkman***, 435 U.S. 349, 98 S. Ct. 1099, 55

L. Ed. 2d 331 (1978) at 356-357 and ***Bradley v. Fisher***, 80 U.S. (13 Wall) (1872) at 351, as the

action(s) is/are construed to be both administrative non-judicial actions and also are outside of the

judges jurisdiction.[1]  We request the right to maintain this position so as to more clearly argue this

in upcoming motions and actions in this case.[2]  A decree was violated and declaratory relief was

not made available.

---

[1] Qualified Immunity is overcome when officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727 (1982)

[2] 28 USC § 453 and 28 USC § 544 (Oath of Office for Judges and US Attorneys and USC § 3331 Oath of Government Employees). It is exclusively in the defendant's decree promulgated by the United States Constitution to protect Constitutional rights.  Protecting the administration of justice is one thing, stealing Constitutional guarantees under the color oF "protecting" scheme shocks the conscience, a foreseeable harm, a created danger, a substantive due process violation,

5.    The defendants are United States entities and employees, the State of New Jersey entities and employees, people and places and entities contracted with and connect to the United States of America and to the State of New Jersey and to each other.  They each have had direct participation, indirect participation or failure to act participation in the civil rights violations.

6.    The individual defendants are being sued in their official and personal capacity.

7.    Constitutional Rights are protected and are not limited to the following amendments.  United States Constitution *Article I, Section 9* "The Privileges of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public safety may require it" "No Bill of Attainder or ex post facto Law shall be passed". *Amendment I* [1791], "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof….and to petition the Government for a redress of grievances".  *Amendment V* [1791], "….nor be deprived of life, liberty, or property, without due process of law…." *Amendment VI* [1791], "….the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed…." *Amendment VIII* [1791], "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted". *Amendment IX* [1791], "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people". *Amendment X* [1791], "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people". *Amendment XIII* [1865], Sections 1. & 2.  Section 1. "<u>Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United</u>

---

and abuse of power.  It is an act clearly outside of jurisdictional power.    See *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3rd Cir. 2006)

**States, nor any place subject to their jurisdiction**".   Section 2. Congress shall have power to enforce this article by appropriate legislation". *Amendment XIV* [1868], Section 1. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property; without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws". *Amendment XV* [1870], Section 1. & 2. Section 1. "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." Section 2. "The Congress shall have power to enforce this article by appropriate legislation".

**8.**     18 U.S.C.A §§ 1961-1968, 18 U.S.C § 1951, 18 U.S.C.S. § 1962 (a) provides the District Court original jurisdiction as per RICO claims under 18 U.S.C.S. § 1964(c).

**9.**     The Plaintiff has economic injury, directly and indirectly, the Plaintiff has and is suffering Injury in Fact which is invasion of legally protected interests that is concrete and particularized and actual and imminent and is traceable to the defendants' conduct, these Injuries in Fact establishes sufficient concrete adverseness to meet Article III case or controversy test. A favorable ruling from the court would redress Plaintiff's injury.

## SECTION 2: PREVIOUS CIVIL ACTION

NO___ X ___YES_____

## SECTION 3: PARTIES

**PLAINTIFF**

**1.**     The Plaintiff is currently a Federal Detainee presently in the custody of The United States Marshal Service, being unlawfully warehoused under profitable contract ultimately for the Prison

Industrial Complex, at the Essex County Corrections Facility 354 Doremus Ave. Newark, New

Jersey, 07105.

## **DEFENDANTS**

1) UNITED STATES OF AMERICA

2) UNITED STATES MARSHALS SERVICE, 402 East State Street, Trenton, NJ 08608

3) U.S. DIST COURT, SOUTHERN DISTRICT OF NEW YORK, 500 Pearl Street, NY, NY
10007

4) HON.CHIEF JUDGE COLLEEN MCMAHON, 500 Pearl Street, New York, NY 10007

5) U.S. DEPARTMENT OF JUSTICE, 950 Pennsylvania Ave. NW, Washington, DC 20530

6) NJ GOVERNOR PHIL MURPHY, 225 W. State Street, Trenton, NJ 08625



7) COUNTY OF ESSEX, NJ, 465 Dr. Martin Luther King Jr. Blvd., Newark, NJ 07102

8) DIRECTOR ALFARO ORTIZ, ECCF, 354 Doremus Ave, Newark, NJ 07105

9) WARDEN GUY CIRELLO, ECCF, 354 Doremus Ave, Newark, NJ 07105

10) CFG MEDICAL SERVICES, 765 East Route 70, Building A-1101, Marlton, NJ 08053

11) NY GOVERNOR ANDREW CUOMO, STATE CAPITOL BUILDING, ALBANY, NY
12224

I respectfully request to maintain the right to amend the defendants.

## **SECTION 4: STATEMENT OF CLAIM**

1.     The defendants conspired under the color of law to deprive plaintiff of constitutionally

protected rights and guarantees of the 1st, 4th, 5th, 6th, 8th, 13th and 14th amendments with the

exploitation of the Covid-19 crisis.  Defendants listed were personally involved in the claims set

forth below by direct act, supportive acts or allowing the act to continue.

2.    **Claims Upon Defendants:**

UNITED STATES OF AMERICA is a defendant because it is the entity that employs several of the defendants who conspired to deprive plaintiff of constitutional rights.

UNITED STATES MARSHALS SERVICE are employed by the United States and all pretrial detainees are officially in their custody. They are responsible for plaintiff's detention and are co-conspirators to the violations within this complaint.

U.S. DIST COURT, SOUTHERN DISTRICT OF NEW YORK is an entity of the United States who employs other defendants within this complaint.

HON. JUDGE COLLEEN MCMAHON is the Chief Judge for the Southern Federal District of New York who signed the unconstitutional <u>blanket</u> ends of justice standing order that the other defendants conspired to deprive plaintiff of constitutional rights.



U.S. DEPARTMENT OF JUSTICE conspired with other defendants to deprive plaintiff of constitutional rights.

COUNTY OF ESSEX, New Jersey who runs Essex County Correctional Facility conspired with other defendants to deprive plaintiff of constitutional rights.

DIRECTOR ALFARO ORTIZ is the Director of Essex County Correctional Facility, issued emergency declarations and conspired with other defendants to deprive plaintiff of constitutional rights.

WARDEN GUY CIRELLO is the warden of Essex County Correctional Facility who conspired with other defendants to deprive plaintiff of constitutional rights.

GOVERNOR ANDREW CUOMO created the Covid-19 emergency orders that were used by defendants to deprive plaintiff of constitutional rights.

CFG MEDICAL SERVICES is the contracted medical service provider for Essex County Correctional Facility and conspired with other defendants to deprive plaintiff of constitutional rights.

NJ GOVERNOR PHIL MURPHY created the Covid-19 emergency orders that were used by defendants to deprive plaintiff of constitutional rights.

**3.** **Federal Question:**

Is the application of the "emergency power" of state and federal officials, and the application of the ends of justice provisions of the Speedy Trial Act (18 U.S.C. 3161(h)(7)(A)) to exclude all tolling time of indictments and trials, used by multiple United States District Courts across this nation constitutional when they are used as blanket orders in administrative operational standing orders to stay constitutional rights because of what some may suppose to be an extraordinary emergency of a covid-19 pandemic?



**4.** **Constitutional Challenge:**

This Constitutional Challenge to the Speedy Trial Act Statue 18 U.S.C.S. 3161(h), as it is being applied to the "Standing Orders" in response to Covid-19 to take away speedy trial guarantees of the Sixth Amendment and the Speedy Trial Act, 18 U.S.C.S. 3161(h) is being applied Unconstitutionally.

The Standing Orders fail the detailed factual finders" on a **"case to case" basis.** The "ends of justice" requirements of the Speedy Trial Act (18 USC § 3161(h)(7)(B)(i) and (ii) and (iii) and (iv)) are not met. ***United States v. Olsen***, 2020 U.S. District LEXIS 193045 (C.D. Calif, Oct 2020) held:

> "For purposes of Speedy Trial Act, what is more, an ends of justice exclusion must be justified with reference to specific factual

> circumstances **in the particular case** as of the time the delay was ordered."

Although the general orders address the district wide health concern, the Supreme Court has emphasized that the Speedy Trial Act's End of Justice provision "counteracts substantive open-endedness with procedural strictness,"…"demanding on the record findings **in a particular case**". *Zedner v. United States*, 547 US 489,  126 S Ct 1976, 164 L Ed 2d 749, 2006 US LEXIS 4509 (2006).  (See *United States v. Reese*, 917 F. 3d. 177 2019 U.S. App. LEXIS 66 77 (3rd Cir. Pa. March 5, 2019) (see *United States v. Greer* 2021 U.S. App. LEXIS 358_ Fed App. _ 2021 WL56931 (3rd Cir. Pa. January 7, 2021)



The court has used unconstitutional misapplication of the Speedy Trial Act.  The misapplication of the law passed by Congress, has caused a clear and present conflict between the law and the Constitution.  In other words, the court acted in complete absence of jurisdiction to create a **blanket** ends of justice standing order that eliminated a Constitutional right to Due Process.  "Any conflict between the Constitution and laws passed by Congress, the constitution takes precedence." *Marbury v. Madison*, 5 U.S. 137 (1803).  The doctrine of Stare Decisis and Resjudicata are conclusive in the matters presented herein.  It is absolutely clear that the "ends of Justice blanket continuances" in the "standing orders" were done with a complete absence of all jurisdiction under the color of law and are unconstitutional.

In support of the Constitutional Challenge, *United States v. Henning* (9th Cir.), US Dist LEXIS 12246, 2021 WL 222355, held:

> "Although there is no question that the current pandemic is serious, conducting a jury trial during the pandemic is clearly not impossible. Unlike in the cases where the ends of justice exception has been applied in the wake of a natural disaster or other exigency, travel and communications continue to function.  See *Furlow*, 644 F.2d at 767-69; Correa, 182 F.Supp. 3d at 327.  Some aspects of the practice of law

> may be less convenient during this time, but it remains possible to perform necessary trial preparations, access the courthouse, and conduct the trial. See ***Furlow***, 644 F.2d at 767-69; ***Correa***, 182 F.Supp. 2d at 327."

The United States Supreme Court has also spoken about the balancing of our Constitutional rights in covid-19 times. "Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical." ***Roman Catholic Diocese***, 141 S. Ct at 70. (Gorsuch, J., concurring).

<u>Henning</u> further holds:



> "The Constitution of the United States is a law for rulers and people, equally in war and peace, and covers with the shield of its protection all classes of [people], at all times, and under all circumstances." ***Ex Parte Milligan***, 71 U.S. 2, 120-21, 4 Wall. 2, 18 L.Ed. 281 (1866). It "is not to be obeyed or disobeyed as the circumstances of a particular crisis in our history may suggest." ***Downes v. Bidwell***, 182 U.S. 244." ... "It "has no provision lifting restrictions upon governmental authority during periods of emergency." ***Dennis v. United States***, 341 U.S. 494, 520, 71 S. Ct. 857, 95 L.Ed. 1137 (1951) (Frankfurter, J., concurring). Rather, "[t]he People have decreed that it shall be stayed by any branch of the government in order to meet what some may suppose to be extraordinary emergencies." ***Downes***, 182 U.S. at 385, 21 S.Ct. 770 (Harlan, J., dissenting). This is because the drafters "foresaw that troublous times would arise, when rules and people would become restive under restraint, and seek by sharp and decisive measures to accomplish ends deemed just and proper; and that the principles of constitutional liberty would be in peril, unless established by irrepealable law." ***Milligan***, 71 U.S. at 120. The principle that "[g]overnment is not free to disregard the [Constitution] in times of crisis' applies in full force during this pandemic. ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708 (2020) (Gorsuch, J., concurring)"

**Statement of facts of Constitutional Challenge:**

1) The "Ends of Justice" is not served.

2) The "continuances" resulted in a miscarriage of justice and continue to cause miscarriage of justice.

3) The "Ends of Justice" continuances DO NOT outweigh the best interests of the public and the defendant in a speedy trial.

4) The "reasons" and "findings" on record for the blanket ends of justice continuances of the speedy trial act in the standing orders are not substantiated by real facts, they are "recommendations" from third parties, hearsay from hearsay, and are not "facts of the case" basis as required (see ***Zedner***, ***Reese***, and ***Greer***)

5) The coronavirus IS NOT posting a similar, albeit more enduring barrier to the prompt proceedings mandated by the statute rules like in the cases of Mt. St. Helen in ***Furlow*** or 911 terrorist attacks in ***Correa***.

6) With all safety recommendations it is not impossible to have trials. Grand Juries are meeting and are indicting.  Other state and federal courts are having trials. Yet our rights to trial are being disregarded.  It is a violation of equal protection clauses of the Constitution by failing to equally administer justice and constitutional guarantees.

7) The continuances of the continuances violates public trust in the judiciary.  The confidence and integrity of the judiciary is fading fast and impartiality at a grand scale can reasonably be questioned. The "time limit" provision of continuances have been abused and trust has been lost.

8) The continuances are Unconstitutional and must end immediately.

5.   **Background:**

The District Court of New Jersey created "standing orders" to address Covid-19 concerns. These "standing orders" started in March 2020 and approximately every 3 months it has been extended.[3]  It currently is extended through June 1, 2021.  (1 year and 3 months). The standing orders are based on recommendations from 3rd parties that benefit from Covid-19 and their "recommendations.".  These 3rd parties are not limited to CNN, Reuters, NY Times and the CDC. They created the Federal and State "Emergency" recommendations in response to Covid-19.[4]

The standing orders are for administrative court operations for "safety".  What was included that is not within the court's jurisdiction is the disregard of the 6th Amendment and the Speedy Trial Act. Other "recommendations" for "safety" have been exploited to disregard all other

 constitutionally protected rights, especially in jails.  Essex County Correctional Facility has implemented its own type of "standing order" to further deny basic human rights along with denying constitutional rights. (Assembly, Religion, visitation, attorney access, discovery access, extreme quarantine, in humane and cruel treatment, denial of medical care, phone restrictions, clean drinking water, severe mail delays, violation of due process and equal protection of the law.)

### <u>SECTION 5: FACTS OF THE CLAIM</u>

---

[3] ***In re Court Operations Under the Exigent Circumstances Created by Covid-19***, 2020 U.S. Dist. LEXIS 158956 et al.  Quoted: "Regarding the criminal matters, the Court *recognizes* the trial, procedural and substantive rights of criminal litigants and particularly, their right to a speedy and public trial under the Sixth Amendment (and the particular application of that right in cases involving defendants who are detained pending trial)."

[4] Here in the 3rd Circuit, the emergency orders of Pennsylvania Governor Wolf was ruled to be in violation of the constitution.  Quoted: "a Pandemic cannot be permitted to undermine our system of constitutional checks and balances protected by those liberties" and further quoted the Supreme Court "<u>the Constitution was adopted in a period of grave emergency where its grants of power to the federal government and its limitations of power...were determined in the light of emergency</u>." *Butler v. Wolf*, No. 20-677, 2020 U.S. Dist. LEXIS 93484, 2020 WL 2769105.

1.   <u>**Constitutional Facts**</u> - Amendment V mandates that no person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without Due Process of Law.   Notwithstanding, The "Ends of Justice" implementation affords the government latitude to apply pressure in the form of undue influence, unfair persuasion and intimidation using the current incarceration status as the weapon and vise.  This continuance is a clear violation of one's rights to life and liberty.  The aforementioned violates Amendment VI by dissolving all Federal Detainees constitutionally guaranteed and protected rights by the cancellation of court dates and indefinite detention.  This has been or is being done by the forced implantation of said act, provision, law, i.e. "Standing Order" has caused and is currently causing "all" Federal Detainees to be subjected to "EXTREME" cruel and unusual punishment, THEREBY VIOLATING Amendment VIII. This therefore has caused and is currently causing the domino effect violation of the Plaintiff's XIII Amendment Section (1.) Right, being subjected to slavery and or servitude whereof the parties have not been convicted.  This also causes the violation of Amendment XIV, Due Process and Equal Protection of the Law.



Amendment I mandates that Congress "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ... and to petition the government for a redress of grievances" The rights of the defendants are being violated via the forced implementation of the Ends of Justice Standing Order in the restriction of access to clergy and thereby the ability to practice and exercise their religious freedoms.  Amendment IX mandates that the enumeration of the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.  The Ends of Justice Standing Order denies the plaintiffs and all federal detainees of their enumerated Constitutional rights.  Amendment XV mandates the right of citizens to vote and this right has been unlawfully suspended through the continued incarceration of federal detainees

throughout the November 2020 election cycle, whereby no access was provided to detainees to exercise their right to vote.

**2.   Ends of Justice Blanket Standing Order** - The United States Federal Government's incarceration apparatus has instituted an Ends of Justice Blanket Standing Order that is in direct violation of the Rights and Immunities that are provided, guaranteed, and supported by The United States of America's Constitution and the United States Bill of Rights.[5]  Federal Prosecutors have ignored discovery demands normally requiring strict time deadlines.  This is clearly recognizable when one looks at the provision/act/law currently being instituted and enforced, referred to as the Ends of Justice Blanket Standing Order.  This "Standing Order" subjects Federal Detainees to whatever anyone chooses to do, under the guise of "pandemic", including elimination of due process rights, religious rights and severe cruel and unusual punishment while not being convicted or found guilty of any felony.  This includes but is not limited to canceling of court dates, thereby imprisoning American citizens indefinitely, individuals of whom should not be subject to such treatment, as they are not accused of being domestic terrorist and therefore are not being prosecuted under the Patriot Act. The Federal Government has side stepped laws put into place for time allotted to indict, along with laws that are on the books requiring that the Federal Government have any American Citizen that has been formally charged with a felony, brought to trial within its allotted amount of time.



By foregoing, eliminating and canceling American Citizen's Right to a speedy trial, thereby violates Article 1. Section 9. by forcing individuals to be subjected to any court proceedings that

---

[5] The US Supreme Court has held that "even in a pandemic the Constitution cannot be forgotten" and granted an injunction against Covid-19 restrictions in ***Roman Catholic Archdiocese v. Cuomo***, 208 L. Ed. 2d. 206, 2020 WL 6948354 (Nov 2020).  The Eight Circuit held "the Federal Constitution, while flexible, does not allow a **blanket** refusal to afford defendants their right to a speedy trial." ***Kurtenback v. Howell***, 2020 US Dist LEXIS 243175 (2020)

do take place to have the proceeding unconstitutionally move forward via Skype over unsecure internet web sites or unlawfully suffer waiting in jail, prison or confinement until their status is reverted back to the usual Constitutionally sound and supported operating procedure. This time-space, as of yet, has absolutely no set date, although at one point there had been a target time set into place to cancel this "UNCONSTITUTIONAL" ENDS OF JUSTICE BLANKET STANDING ORDER implementation, which was ultimately withdrawn and further extended. This type of disorganization among the Federal Conviction Machine is absolutely being employed and **being used as a means to have Federal Detainees accept plea deals under duress, severe isolation, undue influence, intimidation, coercion and unfair persuasion by prosecutors of whom conduct themselves in unlawful, immoral and unethical manners**, illustrating clear prosecutorial misconduct and manipulation of the current instituted unconstitutional Standing Order by way of misusing the CV-19's unconstitutional Ends of Justice implementation to achieve unlawful objectives. This Ends of Justice Blanket Standing Order also subjects Detainees to suffer the same punishment that of individuals of whom have been duly convicted and or sentenced in a Court of Law. By first arbitrarily subjecting the same to the very treatment as the previously mentioned, including everything from phone time to exercise time even up and to include all rights and privileges. This provision/Law has indeed completely altered, revamped, destroyed or single handedly rewritten the operating procedures of every United States Correctional Institution in America and without Congress nor proper legislation as is required by law.[6] Jury trials are clearly



---

[6] The Ninth Circuit in criminal cases have recently and consistently dismissed charges **with prejudice** for violations of 6th Amendment and the Speedy Trial Act from the "**blanket**" Ends of Justice Standing Order. *United States v. Olsen*, 2020 US Dist Lexis 193045; *United States v. Henning* (9th Cir.), US Dist LEXIS 12246, 2021 WL 222355; *United States v. Sheikh*, 2020 US Dist LEXIS 188189 2020 WL 5995226 (E.D. Cal, Oct 2020); *United States v. Andrews*, 2021 US Dist LEXIS 46180 (E.D. Cal 3/11/2021)

possible.  The Ends of Justice Blanket Standing Order do not comply with the Speedy Trial Act. The 9th Circuit has held that a blanket order does not comply to the Speedy Trial Act, as **by rule**, each defendant must be evaluated separately.

3.     **Severe Isolation** - Federal Detainees are subjected to 22 hours and up to 23 hours and 45 minutes a day LOCK-DOWNS [BEING CONFINED WITHIN A CLOSET SIZED ROOM] and being forced to decide whether to take care of personal hygiene or to contact family and loved-ones in the 15 minutes allowed out of the cell, (closet sized room).  If an American citizen were found to be guilty of this very same form of torture to an animal, the individual would indeed be convicted and sentenced to prison time, under the auspices of animal cruelty. This represents a complete violation of fundamental rights, a significant component of the liberty guaranteed to "all" American Citizens by The American Constitution while not convicted of any felony [s], therefore this encroachment must be rigorously scrutinized by the court to ascertain the soundness of any or "all" purported government/judicial justification [s] in support of its (ENDS of JUSTICE) implementation upon every Federal Detainee and housing facility within the jurisdiction of the United States of America and upon its citizens.  (See <u>Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020</u>)

4.     **Lack of Family Visits as protected by the 8th Amendment** - Federal Detainees have also been sujected to the cancelation of "all" visitation by family and friends, both contact and non-contact, which by and large causes extreme mental stress, thereby putting each and every Federal Detainee's Mental Health at unjustified or unjustifiable risk by totally eviscerating the moral support system. This unduly creates absolute despair, (torture) through the immoral forcing of loneliness, of which has been proven to break a persons will to live, thereby making said person

prime candidates for suicide, (citing, Monmouth County Jail, H-2 April 2020, suicide by hanging.) (See <u>Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020</u>)

**5.**   **Religious Rights -** The plaintiffs/ "all" Federal Detainees have been (since March 2020) and are currently being denied the right to religious and spiritual guidance and support provided by Imam, Rabbi or Clergy due to the cancelation of visits by the co-conspirators listed. While simultaneously witnessing the allowing of commissary provider's employees entry/access to correctional facilities in order to continue commerce which benefits the Institution, its shareholders, stockholders and or all of whom are privy to the profit-sharing that is maintained by the uninterrupted flow of currency generated by the sale of overpriced goods to inmates that are being UNCONSTITUTIONALLY tortured. This creates within a large portion of the inmate population or Federal Detainees an unrecognized desire to consume more (through the feeling of loneliness/abandonment) resulting in a much larger profit margin for the institution and its investors, thereby supporting further the extraordinarily profitable Prison Industrial Complex. As we are "all" American Citizens, we understand that capitalism is a cornerstone of our culture intricately woven into the fabric of society that makes-up our republic/democracy and therefore in-and-of-it-self, is not an issue. Whereas, this is surely an issue wherein torture is the component that drives up the exponential profit. (See <u>Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020</u>)



**6.**   **Unacceptably limited Access to Attorney's -** Federal Detainees/Plaintiff [s] and "all" Federal Detainees as of March, 2020 have been and are currently being denied (physical) contact with "all" attorneys of record, being forced to partake in video calls wherein said individuals are encouraged to openly discuss the mechanics of their case[s] and or strategies thereof, "as it relates to their defense" over proven to be unsecure sites. Attorneys themselves advise (through U.S.P.S

mail), "letters" to their clients that the sites that are being provided are not at all secure and therefore should not be utilized to discuss Defense Strategies. This results in extreme delays in communication[s] and in regards to issues that are time sensitive, this poses a detrimental problem to the forming of an adequate defense. Adding in the fact that the (U.S.P.S.) is experiencing delays outside of its control, thereby resulting in letters from lawyers and the court being delivered anywhere from seven (7) days late as far as up to fourteen (14) days late. This alone, is of grave concern, this practice calls into question the long standing Attorney-Client privilege, of which has stood, been recognized, respected and held in high regard since its inception. Federal Detainees are also terribly limited in the amount of time that they/we are allotted regarding legal research, because of restrictions being enforced due to the rules that have been instituted as a result of Ends of Justice being implemented/thrust upon Essex County Correctional Institution, Monmouth County Correctional Institution as well as every other county jail, prison, holding facility and or any other institution that warehouses Federal inmates and Detainees. (See Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020)

7.    **Extremely Limited & Non-existent Medical Care** – Medical care has been deprived to plaintiff and all federal detainees on a consistent basis.  Examples include requests for medical that were not responded to at all or sometimes months later.  Dental visits were cancelled as "Dentists were not available due to the pandemic".  Healthy teeth were pulled out without proper dental care that often only needed a simple filling.  Eye doctors, orthopedic visits and basic doctor services were not made available.

8.    **Conclusion of Facts** – The principle of "Ignorance of the law is no excuse" is a long cherished and hallowed principle of the law dating to the earliest days of the law in this country. See ***Respublica v. Oswald***, 1 U.S. 319,328, 1 L.Ed 144, 1 Dall. 319 (1788) ("and the offender

pleaded ignorance of the law, yet it is expressly laid down, that ignorance was not an excuse") and ("ignorance of the law furnishes no excuse for any mistake of wrongful act.[7]") The aforementioned clearly illustrates the clear DEPRIVATION OF RIGHTS and a clear and convincing view of the deviation from the normal everyday operating procedures of all Federal Housing complexes, institutions and or facilities, these violations lawfully require adequate remedy and constitutionally sound redress. Rights appear to be whatever the "OLIGARCHS" say they are and could be given and taken away at a moments or without notice and as stated by Benjamin Franklin: "Those who would trade a little Liberty for a little security deserve neither and would lose both." Therefore it is for the fore stated causes that We The People stand in solidarity with our Rights that are provided by The Constitution of The United States demanding that the same be protected and preserved.

### SECTION 6: COUNTS

### COUNT 1: VIOLATIONS OF 42 U.S.C. 1983;

Plaintiff incorporates by reference statement of claim and all counts within this complaint, as if fully set forth here, the defendants under the color of Law and with a clear absence of Jurisdiction deprived Plaintiff of his Constitutional rights.  A decree was violated and a declaratory relief not made available.

Defendants have violated and are currently violating the Constitutional Rights of Plaintiff and thousands of other Federal Detainees.  Defendants conspired to set forth and force the implementation of the Standing Order (ENDS of JUSTICE) without Congress nor legislation

---

[7] *Whiteside v. United States*, 93 U.S. 247, 257, 23 L. Ed. 882, 12 Ct. Ct. 10 (1876)

which violates rights and immunities that are guaranteed, provided and protected by the United States Constitution to "all" American Citizens.

### COUNT 2: VIOLATIONS OF 42 U.S.C. 1985, 1986;

Plaintiff incorporates by reference statement of claim and all counts within this complaint, as if fully set forth here, under color of law and with a clear absence of jurisdiction conspired to deprive Plaintiffs, of his constitutionally protected rights.  Defendants conspired and directly participated, indirectly participated or failed to act in violating plaintiff's constitutional rights.

### COUNT 3: VIOLATIONS OF BIVENS ACTION;

Incorporating all the above, Plaintiff has a right to action for damages for deprivation of constitutional rights by federal employees and officers.  The officers did not act in their scope of employment.

### COUNT 4: VIOLATIONS OF N.J.S.A. 10:6-2

Incorporating all of the above, the defendants violated New Jersey's Civil Rights Statutes under the color of law and with a clear absence of all jurisdiction.

### COUNT 5: VIOLATIONS OF CIVIL RICO STATUTE 18 USC§ 1964

Incorporating all of the above, the defendants under the color of law and with a clear absence of jurisdiction, acted as a criminal enterprise that is run as a business with a pattern of illicit conduct exceeding two predicate acts that equates to fraud, corruption, violence and activity in furtherance of human trafficking and slavery.  Defendants gained profit while denying human rights to plaintiff.

### COUNT 6: VIOLATIONS OF ADMINISTRATIVE AGENCIES ACTIONS 5 USC § 702

### UNDER FEDERAL QUESTION JURISDICTION 28 USC § 1331

Administrative Agencies Actions, arbitrarily and capriciously abused their discretion and acted not in accordance with law which violated the constitution. Agencies did not have the authority nor followed the legally required procedures. Agencies conspired with other defendants to deprive plaintiff of constitutional rights.

### COUNT 7: VIOLATIONS OF 28 USC § 1346 FEDERAL TORT CLAIMS ACT

Incorporating all of the above the United States of America employed defendants who conspired to violate the constitutional rights of plaintiff.

### COUNT 8: VIOLATIONS OF 42 USC. § 2000bb-2000bb-4 RELIGIOUS FREEDOM RESTORATION ACT / 42 USC § 2000cc-2000cc-5 RLU & INSTITUTIONALIZED PERSONS ACT

Incorporating all of the above the defendants conspired to violate the religious rights of plaintiff.

### SECTION 7: INJURIES

There has been irreparable injury to the plaintiff, both physically and mentally. Plaintiff has and is being deprived of liberty, causing loss of relationships, family, friends along with financial loss, reputation, stigma of lengthy pretrial incarceration and loss of the ability to make a living. Plaintiff has had virtually no access to proper medical care or dental care. Plaintiff's medical records will be retrieved under this case and provided for further details. Plaintiff has been detained for an extremely excessive amounts of time under the misguided application of the blanket standing order. After over a year of extreme lockdown, treating Plaintiff less humanely than an animal for slaughter, plaintiff will likely suffer post-traumatic stress for extensive parts of his life.

### SECTION 8: RELIEF

### QUO WARRANTO RELIEF

Incorporating all of the above, I am requiring the defendants to show by what right or authority the defendants exercised to deprive plaintiff of constitutional protected rights and cruel inhumane treatment.

### 18 U.S.C. § 1651 WRIT RELIEF

Incorporating all the above plaintiff requests a writ to end the "Ends of Justice" blanket continuances in the "Standing Orders" and for plaintiffs' case which was prejudiced by the continuances of the "Standing Orders" to be dismissed with prejudice in accord with the Speedy Trial Act.[8]

### INJUNCTIVE RELIEF / TEMPORARY RESTRAINING ORDER

Incorporating all the above Plaintiff is requesting an emergency injunction upon defendants to end the Covid-19 abuses on everyone's rights to a speedy trial, religious rights, lawyer and discovery access in jails, end severe isolation and human cruelty in jails, order US Attorneys to adhere to their obligations of discovery, access to family visits and provide basic medical and dental care immediately. Injunctive relief should include sanctions for violation of injunctive order.

### 18 USC § 1361 ACTION TO COMPEL AN OFFICER OF THE UNITED STATES TO PERFORM DUTY:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States thereof to perform a duty owed to the plaintiff.

---

[8] The Third Circuit Court of Appeals held that the Speedy Trial Act leaves no room when indictment or tolling time is violated, the charges must be dismissed. United States v. Greet, 832 Fed. Appx. 787 (3rd Cir. Jan 2021)

**Order 1:** Order each individual officer of the court to abide by their oath of office and uphold their duty to the plaintiff, to uphold the plaintiff's constitutional rights, to include stopping violations of 6th amendment to a speedy trial and restoring them.

**Order 2:** Order jails to restore religious rights, allow lawyer access and discovery document access and end severe isolation and human cruelty, access to family visits and provide proper medical and dental care immediately.

**Order 3:** Order US Attorneys to adhere to their obligations of discovery and their oaths of office.

**Order 4:** Injunctive relief should include sanctions for lack of performance of duties of this action.



Justice Sutherland writing for the majority in the Supreme Court case ***Berger v. United States***, 295 US 78,99 stated,

> *"The United States Attorney is the representative not of an ordinary part to a controversy, but of a sovereignty whose obligations to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefor, in criminal prosecution is **not that it shall win a case, but that justice shall be done**. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffers. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, **he is not at liberty to strike foul ones**. It is as much his duty to **refrain from improper methods calculated to produce a wrongful conviction**."*

The Center for Prosecutorial Integrity provides the answer to why prosecutors engage in this type of behavior. As quoted in **An Epidemic of Prosecutor Misconduct, December 2013**, ***"Prosecutors are subjected to a variety of powerful incentives that serve to reward zealous advocacy" including "favorable media coverage, career promotions, appointment to judgeships***

*and the allure of high political office."* While they are supposed to adhere to the highest standards, their win-loss record can make or break a prosecutor's career. They use this as a first-class ticket to seven-figure incomes in the most prestigious national or international law firms or promotions up the ladder in the Department of Justice, the White House, or the leadership of the FBI. All of this does not come free, it comes at the cost of hundreds of thousands of people behind bars.

The **Center for Prosecutor Integrity** lists 10 actions that are the most common types of prosecutorial misconduct. (1) Charging a suspect with more offenses than is warranted (2) Allowing witnesses they know or should know are not truthful to testify (3) Pressuring defense witnesses not to testify (4) Overstating the strength of the evidence (bail & plea negotiations) (5) Making improper or misleading statements. (6) Withholding or delaying the release of exculpatory evidence. (7) Deliberately mishandling, mistreating, or destroying evidence (8) Relying on fraudulent forensic experts (9) Making statements to the media (or press releases) designed to arouse public indignation (10) Failing to report prosecutor misconduct when it is discovered. Most prosecutors have come to understand that they can operate with impunity, so they take full advantage of their unbridled power. They must do their sworn duty and act within the constitution, not win at all cost.

## JUDGEMENT IN FAVOR OF PLAINTIFF AND IMMEDIATE RESTORATION OF CONSTITUTIONALLY PROTECTED RIGHTS AND GUARANTEES

As a result of all acts and conduct, forced enforcement of violations of federally protected constitutionally provided Civil Rights and immunities and omissions committed under the color of state law in the form of customs, policies, act[s], provisions, "STANDING ORDER", public health emergency and practices, failure to train, audit, supervise, and discipline, and intentional

acts maliciously, intentionally and willfully committed against Plaintiff[s] person[s] must be remedied. Plaintiff[s] have and are suffering harm[s] and injuries including but not limited to humiliation, pain, mental cruelty, economic loss, loss of liberty, and unlawful violations of their constitutional rights.

On all counts and claims for Relief, Plaintiff[s] demands judgment in their favor and declaratory relief in the form of a declaration that the actions and conduct of all the Defendant[s] both named and unnamed was/were and is currently in violation of 42 U.S.C. 1983, 1985, 1986, as well as Amendments I, V, VI, VIII, IX, XIII, XIV & XV of the United States Constitution and injunctive relief ordering all Defendants to cease their unlawful conduct. On all Counts and Claims for Relief, Plaintiff[s] demand judgment in their favor and to award punitive damages as allowed per named statutes, against each Defendant according to the findings of the jury, due to the malicious, oppressive, outrageous, unconstitutional and unjustifiable actions and conduct of all Defendants. On all Counts and Claims for Relief, Plaintiff demands judgment in their favor pursuant to 28 U.S.C. 1920, 28 U.S.C. 1961, and 42 U.S.C. 1988 et seq. On all Counts and Claims for Relief, Plaintiff[s] demand judgment in their favor and any other relief the Court may deem appropriate and just, and otherwise in the interest of justice.



## **MONETARY RELIEF**

An award of punitive damages and exemplary damages to Plaintiff[s] in an amount of "$2,000 PER DAY"[9] during the period of March 15, 2020 to present, plus "$500 per day" for emotional injury for the same time period, as sufficient to punish the Defendant[s] against whom

---

[9] ***Watson v. United States***, 179 F. Supp. 3d 251: 2016 U.S. LEXIS 23250 (E.D. NY, 2016) – "A judgment in favor of the plaintiff shall be entered on those claims for the total amount of $82,000. It includes $2,000 per day for 27 days for loss of liberty, $500 per day for 27 days for emotional injury, and $15,000 for false arrest"

these damages are awarded and sufficient to deter similar conduct in the future by said Defendant[s].

### **ORDER RELIEF SIMILAR TO NJS2519 FOR STATE DETAINEES**

Further, on all Counts and Claims for Relief, Plaintiff[s] demands judgment of four [4] days for every one [1] day served during the unlawful and unconstitutional detention during the period of March 15, 2020 to present for Plaintiff.

### **SECTION 9: DEMAND FOR JURY TRIAL**

On all facts, Counts and Claims asserted, Plaintiff[s] demand a trial by jury as is their United States Constitutional Right, guaranteed by Amendment VII of the United States Constitution.

### **SECTION 10: PRAYER**

Plaintiff incorporates by reference statement of claim and all counts within this complaint, as if fully set forth here.

**A.** Declaratory judgment that the acts of the defendants, and their agents and employees, violated 42 U.S.C. § 1983, 1985, 1986, 28 U.S.C. 1367, 18 U.S.C.S § 1964(c), Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) , 5 USC § 702; 28 USC § 1346; 42 U.S.C. , § 2000a & 2000b-2, U.S. Constitution 1st, 5th, 6th, 8th, 9th and 14th Amendments, Torts under the laws of the State of New Jersey and the United States of America, causing Unconstitutional imprisonment, Abuse of process, Gross negligence and Malicious Prosecution.

### **SECTION 11: INDIGENT PLAINTIFF REQUESTS THE COURT TO APPOINT COUNSEL TO REPRESENT PLAINTIFF.**

Plaintiff is requesting that he be allowed to proceed in forma pauperis. Plaintiff is currently incarcerated as Federal Detainees and cannot afford to secure private counsel. Plaintiff does not

have any formal legal education, therefore he requires a trained and licensed civil attorney to assist him in this civil action to assert his rights, to insure that said rights are protected and to seek redress for rights violations. As an incarcerated person, plaintiff does not have a proper work environment that would enable Plaintiff to manage a lawsuit independently. For these reasons and good cause being shown, plaintiff requests the court appoint counsel to represent the interest brought forth in this complaint/civil action.

Further, as explained in ***Knighton v. Watkins***, 616 F.2d 795, 799 (5th Cir. 1980), an appointed counsel can limit litigation to potentially meritorious issues, conduct discovery and depositions, negotiate a settlement more expeditiously, shorten the trial and limit evidence to relevant issues, benefiting the plaintiff, opposing parties and the court.  The factors that are weighed by courts offer a clear showing to appoint counsel as:

**1)** the case appears to have merit.[10]



**2)** the plaintiff is incarcerated with extremely limited access to perform the necessary tasks to investigate and interact with the court and the defendants.  ***Montgomery v. Pintchak***, 294 F.3d 492, 502 (3rd Cir. 2002) (directing appointment of counsel because imprisoned plaintiff could not take necessary depositions and "encountered multiple obstacles in discovery, both in the resistance of the defendants and in the intricacies of discovery rules")

**3)** The case is complex.[11]

## SECTION 12: CLASS CERTIFICATION (UPON APPOINTMENT OF COUNSEL)

---

[10] ***Carmona v. U.S. Bureau of Prisons***, 243 F.3d 629, 632 (2nd Cir. 2001)"...We look first to the 'likelihood of merit' of the underlying dispute., Risley v. Hawk, 108 F.3d 1396 (DC Cir. 1997); Tabron v. Grace, 6 F.3d at 155

[11] ***Steele v. Shah***, 87 F.3d 1266, 1271 (11th Cir., 1996); Tabron v. Grace, 6 F.3d at 156; Jackson v. County of McLean 953 F2d 1070, 1073 (7th Cir. 1992)

Upon appointment of counsel, plaintiff plans to file a class certification. This case meets the standard of "ascertainability"[12], as determining who is a class member can be clearly defined. Other factors are met including:

1) Class members are unlikely to bring their own suits because of poverty, illiteracy, language barriers, lack of education and limited access to legal representation.[13] The membership class or the federal detainee jail population weighs heavily in favor of class certification.

2) There are common issues of law[14] and fact in the claims, including: severe isolation, lack of medical care, lack of access to family visits, no access to clergy and religious rights, little access to attorneys, violation of constitutionally protected speedy trial rights and other constitutionally guaranteed rights.

3) The claims contain the "same legal or remedial theory" as other class members.[15]

4) The class representative has common interests with unnamed class members and will vigorously pursue the interests of the class through qualified counsel.

---

[12] John v. National Sec. Fire and Cas. Co., 501 F.3d 443,445 (5th Cir. 2007); McBean v. City of New York, 228 F.R.D. 487,492 (S.D.N.Y. 2005)("A class is ascertainable when defined by objective criteria that are administratively feasible, without subjective determination.")

[13] Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D 194, 204-05 (E.D.N.Y. 2005); Amone v. Aveiro, 226 F.R.D. 677, 684 (D. Haw. 2005)(class certified of individuals 'whose financial circumstances may prevent them from pursuing individual litigation, who are unlikely to know that a cause of action exists, and whose individual claims are likely to be too small to make individual litigation feasible")

[14] Rule 23(a)(2), Fed. R. Civ. P.

[15] J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1299 (10th Cir. 1999); see DeHoyos v. Allstate Corp., 240 F.R.D. 269, 282 (W.D. Texas 2007)("The test is simply whether the defendant discriminated "in the same general fashion against the class representatives and the other members of the class."

## **CERTIFICATION OF PLAINTIFF**

I, OSCAR PALMER, Plaintiff, certify under penalty of perjury, that I am personally familiar with all facts, allegations and statements made within this complaint based on personal knowledge. I certify that all facts, allegations and statements made are true and correct to the best of my knowledge. I understand there are penalties for knowingly providing false statements and or claims.

SIGNED:      x _Oscar Palmer_      DATE: _5/7/21_

OSCAR PALMER

## <u>LEGAL ARGUMENT & SUPPORTING FACTS</u>

## <u>OF THE CERTIFIED CIVIL RIGHTS COMPLAINT</u>

Essex County Correctional Facility ('ECCF'), Monmouth County Correction Facility and other state, county and Federal detainee jails have been under severe lockdown quarantine since March 2020.  These procedures have created clear violations of aforementioned statutes and Constitutional Amendments listed in the complaint.

On November 25, 2020, the Supreme Court ruled in a landmark decision that "even in a Pandemic, the Constitution cannot be put away and forgotten" and that "even if The Constitution has taken a holiday during the pandemic, it cannot become a sabbatical." ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708 and ***Agudath Israel of America et al. v. Cuomo*** No. 20A90.  The ruling now requires that an executive order based on a Pandemic cannot remove or reduce a constitutional right.



These conditions at ECCF include: **(1) 20 to 23 ½ hours of daily isolation/lockup in a small closet sized room, (2) extremely limited access to legal counsel, (3) no family visits either contact or no contact to support family stability and thereby mental health, (4) no access to clergy or religious services, (5) extremely limited access to medical care, and (6) Suspension of 6th Amendment Speedy Trial Act Rights.**

Federal Judges have historically granted jail credits for excessively harsh jail conditions and constitutional violations suffered.  Since March 2020, detainees in state custody in New Jersey, New York and nationwide have had laws and executive orders passed <u>requiring</u> the addition of jail credits for being detained under these conditions with as much as 4x credits.  No such laws or mandates have been passed for a federal inmate suffering under the exact same conditions and even residing in the exact same facilities.

For example, New Jersey detainees with state charges, under NJ S2519 have been offered relief by adding credits to their time served, based on the number of months that they have been incarcerated. NJ S2519 provides up to **4x time served credits** towards their sentences. As there has been no such similar considerations for federal detainees, this creates a 3553 sentence disparity, as people who have virtually the same circumstances are receiving drastically different sentences.

Third Circuit law, see *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006) and *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), requires that attention must be paid to individuals who have suffered significantly after judicial officers remanded them to federal custody to await disposition of their cases. Downward variances have been consistently granted for even lesser extreme conditions than detainees are currently suffering, including reduction of sentences and double time jail credits. See: *United States v. Ortiz*, 2007 U.S. Dist. LEXIS 87055 (3rd Dist., 2007), *United States v. Sutton*, 2007 U.S. Dist. LEXIS 79518 (3rd Dist., 2007)



In *United States v. Stevens*, 223 F.3d 239 (3d Cir. 2000), the Third Circuit declined to disturb the lower court's determination that it had the legal authority to grant a departure based on conditions affecting inmates *generally, not just specific to the actual inmate*. See also *United States v. Luna*, 2002 U.S. Dist. LEXIS 6207 (E.D.Pa. Apr. 10, 2002)

**_Roman Catholic Diocese of Brooklyn v. Cuomo_, 2020 US LEXIS 5708 (Nov. 25, 2020, US Supreme Court)**

In **_Roman Catholic Diocese of Brooklyn v. Cuomo_**, 2020 US LEXIS 5708, the Supreme Court ruled in favor of all Americans access to their Constitution rights during a pandemic, ruling that the restrictions by NY Governor Andrew Cuomo were unconstitutional. Quoted:

"The loss of the First Amendment freedoms, for even minimal periods of time, unquestionable constitutes irreparable injury. Elrod v. Burns 427 US 347, 373 (1976)"

***Per Curiam*** - "…even in a pandemic, the Constitution cannot be put away and forgotten"

***Justice Gorsuch*** – "Government is not free to disregard the First Amendment in times of crisis" and "Even if the constitution has taken a holiday during this pandemic, it cannot become a sabbatical."

***Justice Kavenaugh*** – "…judicial deference in an emergency or crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised"

While Cuomo restricted church services for the Catholic Church and the Jewish Temples, people were freely able to continue commerce by shopping at stores and freely visiting dozens of other "*essential services*" [hardware stores, bike shops, acupuncturists, liquor stores, marijuana dispensaries, casinos, etc]. Similarly, while Federal Detainees lack family and attorney visits, commissary representatives enter the jail to keep the financial commissary machine moving. Also, guards, civilian kitchen workers and others are admitted each day with a minimal forehead temperature scan procedures. Equal Protection of the Law is required under the 14th Amendment for both churches and detainees.



Grounded in this ruling, the constitutional rights of all Americans including Federal Detainees cannot and must not get "put away and forgotten" and must be maintained during a pandemic.

### Suspension of the 6th Amendment - Speedy Trial Act

The Covid19 crisis has created an extended period of incarceration, as the 3rd Circuit Chief Judge has enabled an "Ends of Justice" continuance, which has put a freeze on the speedy trial clock, creating constitutionally excessive incarceration that go far beyond the 70 days allowed to its current span of 360+ days. See ***In re Court Operations Under the Exigent Circumstances***

*Created by Covid-19*, 2020 U.S. Dist. LEXIS 158956 et al.  Quoted: "*Regarding the criminal matters, the Court recognizes the trial, procedural and substantive rights of criminal litigants and particularly, their right to a speedy and public trial under the Sixth Amendment (and the particular application of that right in cases involving defendants who are detained pending trial).*" However, the ruling was that public interest outweighs their constitutional rights.  The current extension has been in effect since March 16, 2020.  **In light of the recent Supreme Court ruling, the "sabbatical" taken by discontinuing all trials and speedy trial rights must be re-examined and relief must be provided to aggrieved parties.**

### "Punishment" not allowed for pretrial detainees

Pretrial detainees constitute a special category of prisoners. It has been generally held that pretrial detainees are entitled to the same rights as other citizens except to the extent necessary to assure their appearance at trial and the security of the institution. (*Bell v. Wolfish*, 441 U.S. 520 (1979); *Rhem v. Malcolm*, 396 F. Supp. 1195 (S.D.N.Y.), *affd*, 527 F.2d 1041 (2d Cir. 1975)) Although a pretrial detainee may be subject to some of the same restrictions as convicted prisoners,  the restrictions become unconstitutional when they amount to punishment. (*Occhino v. United States*, 686 F.2d 1302 (8th Cir. 1982))

In order for the Eighth Amendment's prohibition to apply, a punishment must be involved. In a criminal law sense, punishment is "any fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime . . . or for his omission of a duty enjoined by law. (*Blacks Law Dictionary* (6th ed. 1990))  As applied to correctional law, a punishment consists of four elements: (1) Action by an administrative body, (2) which constitutes the imposition of a sanction, (3) for the purpose of penalizing the affected person, and (4) as the result of the commission of an offense.  Courts nationwide have suggested

that **any treatment to which a prisoner is exposed is a form of punishment**, (*Landman v. Royster*, 333 F. Supp. 621, 645 (E.D. Va. 1971)), because it is an additional punishment above that imposed by the sentencing criminal court. As the result of being a punishment, it is subject to the Eighth Amendment review.

ECCF lockdown conditions constitute punishment and it has been executed with impunity for well over a year.

### Lack of Access to Attorneys for detainees

#### Attorney Visits

"Legal representatives may visit inmates from 07:00hrs -19:00 hours seven days a week."..."If you have made an appointment to meet with an attorney or legal representative it is your responsibility to cancel the appointment if you do not intend to keep it. ." (Page 34, ECCF Inmate Handbook.)

"Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 — "Transitioned all attorney and contact visits to window visits only and expanded the window visit schedule. All detainees and inmates were separated from visits by a glass partition." (page 6, Item n.) "ECCF facilitates confidential telephone calls between detainees and inmates and their attorneys. Every housing area has a set of tablets that inmates and detainees can use to make telephone calls. Attorneys may contact the Inmate/Detainee Advocate to arrange for a telephone call with their client. The inmate or detainee can use headphones while speaking with their attorney." (page 8, Item g.) "On or about April 1, 2020, ECCF opened a dedicated room within the visitor's lobby wired to support video conferencing capability between inmates and detainees and their attorneys at the facility." (page 8, Item j.) "From the POD, inmates and detainees can make non-confidential

calls to attorneys for 15 minutes.   Advocates can initiate calls to inmates or detainees on a confidential line for up to 99 minutes." (page 9, item k.)

The Plaintiff claims that the Defendant has and currently is violating Constitutional Rights by the unconstitutional implementation of ENDS of JUSTICE upon Federal Detainees of whom are at this time being warehoused in Federal holding Facilities around the country. As stated in the United States Constitution "...citizen [s] have a right to council...." And this right has been suspended as mentioned above, and there seems to be absolutely no regard for Attorney / Client confidentiality when one scrutinizes the fact that within the Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 it clearly states as fact that, "ECCF facilitates confidential telephone calls between detainees and inmates and their attorneys."

An individual accused of a crime has a fundamental right to counsel and the right to be represented by an attorney of his or her choice. This right is protected by the Fifth and Sixth Amendments and may not be unreasonably limited by jail officials. (*Sander v. Russell*, 401 F.2d 241, 247 (5th Cir. 1968); *State ex rel. McCamie v. McCoy*, 276 S.E.2d 534 (W. Va. 1981))  This right is not altered when the individual is incarcerated.   Prison officials may not unreasonably prevent legal counsel from meeting with their prisoner clients as long as the attorney observes all of the rules of the institution.  (*Lynott v. Henderson*, 610 F.2d 340 (5th Cir. 1980)).  Nor may officials infringe upon a prisoners right to communicate with his or her attorney by placing undue restrictions on his or her visitation rights. (*Jones v. Diamond*, 594 F.2d 997 (5th Cir. 1979)) Courts have held that it is impermissible for prison officials to arbitrarily limit a detainee's right to an attorney's assistance.



For the greater part of the ECCF Covid19 containment period, attorney visits have been limited to 15 minute windows whereby the attorney can come to the jail and speak by a video call.

These visits end as quickly as they start and are interrupted every few minutes with a software error.  The time has recently been extended to around 20, but by no means does this allow a detainee the ability to prepare for trial as dictated by 6th Amendment Due Process law and case law.  As per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for attorney visits.

## Severe Isolation & Quarantine

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishments. The Supreme Court has interpreted this clause to prohibit punishments that indicate torture, unnecessary cruelty, or something inhuman and barbarous (*In re Kemmler*, 136 U.S. 436 (1890); *Wilkerson v. Utah*, 99 U.S. 130 (1878)) and when a punishment is unnecessarily cruel in view of the purpose for which it is used.  Mental cruelty from isolation lock down has been held by the Supreme Court as sufficient to be addressed by the eighth amendment.

ECCF has had to use isolation as a means of preventing the spread of Covid19.  This isolation of federal detainees ranges from 20 hours per day to 24 hours per day.  This isolation involves being locked in a large closet sized room, often with no clean drinking water, limited time to shower, no access to exercise. Federal courts will provide relief for deprivation of a prisoner's constitutional right to be free of cruel and unusual punishment during his or her stay in isolated confinement when the conditions of the confinement become such that a prisoner is deprived of personal hygiene and other basic civil rights.  This includes something as simple as clean drinking water or the ability to shower.

Courts have held that **when the conditions of isolated confinement are disproportionate to the offense involved or used for an improper means it thus runs afoul of the Eighth**

**Amendment** (*Wagner v. Hanks*, 128 F.3d 1173 (7th Cir. 1997)).  Clearly Federal ECCF detainees have not violated any regulations of the institution but are still receiving "punishment" via extensive periods of isolation in jail cells.

Additionally, there have been no books distributed to read, leaving detainees with nothing to do for 20+ hours per day exacerbating their extremely depressed mental states, often losing their will to be alive and having suicidal thoughts.

## No Family Visitor Access

"Visitation can be a stressful and frustrating experience not only for the inmate but for his or her family and friends."…"visitation helps everyone involved with the inmate.  Visitation can boost the morale of your loved ones and make his or her adjustment to his incarceration and reentry more bearable.  Visits can also keep your relationship with your loved ones more stable.  ECCF staff wants your visitors to have a pleasant visit." (Page 31, ECCF Inmate Handbook.)

"Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 – "As of March 22, 2020, ECCF disallowed visitation for all family and friends of ECCF inmates and detainees" (page 7, Item d.)

The Plaintiff claims that the federal Government has violated their Constitutional Rights by first unconstitutionally forcing E.C.C.F. and all other Federal and State Institutions to indefinitely suspend the normal day-to-day operating procedures of the same, by imposing unlegislated act[s]/provision[s] and or law[s]. This is being done while not being in line with The United States Constitution and the implementation of said act[s]/provision[s]/ and or law[s] has caused E.C.C.F. to unjustly alter the modus-operandi of the institution, as of March 22, 2020 (mentioned above) thereby making the Defendant responsible for the unjust cruel and unusual punishment being inflicted on all Federal Detainees. The Federal Government has also unconstitutionally forced

E.C.C.F. to deviate from the rules set forth in the inmate hand book used to govern the facility, which in fact does not at all express any type of reasoning for deviations from rights or privileges outside of disciplinary reasons.

The ECCF Covid19 lockdown has eliminated both contact and non-contact visits. Courts have held that, for detainees, restrictions on visitor access must be justified by a compelling interest. (*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3d Cir. 1979); *Cooper v. Morin*, 49 N.Y.2d 69, 399 N.E.2d 1188, *cert. denied*, 466 U.S. 983 (1979); *Epps v. Levine*, 480 F. Supp. 50 (D. Md. 1979)).

As per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for family visits.

## No access to Religious Services or Clergy

Religious Services  (Page 36, ECCF Inmate Handbook.)

1. "Inmates may identify their religious affiliation during the intake process.  The view of agnostics and atheists shall be respected."

2. "Pre-registration for attendance at religious services may be enforced it is determined necessary for the safe and secure operation of the facility."

3. "Pastoral care service providers from all major faith traditions are available for religious and spiritual consultation or counseling.  Inmates may submit requests for such services to a housing pod officer, ombudsperson, or social worker.  Inmates may add their religious or spiritual leader to their lists of visitors."

4. "A schedule of religious services is posted in the housing pods and available from a social worker or ombudsperson.  Attendance at religious services is voluntary."

5. "Inmates are permitted to purchase for delivery by mail spiritual and religious material."

6. "The granting or denial of privileges, or discrimination or punishment on basis of religious or spiritual beliefs is expressly forbidden."

7. "All religious and spiritual groups shall have equal access to facilities and privileges based on security concerns and number of participants."

8. "Religious and spiritual services are provided on a rotating schedule.  Services shall only be provided for those inmates who are out for recreation activity in his/her respective housing area."

"Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 – (page 6, Item l.) – "Suspended all religious services conducted by outside volunteers;"

The Plaintiff claims that the Defendant has/is violating not only the Plaintiff's Constitutional Rights but the Constitutional Rights of "all" Federal Detainees across the fruited plain. This claim is supported by the statement on page 6, Item 1 (above) of the Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020, which is unusual due to the normal operating procedure explained on Page 36, ECCF Inmate Handbook (1-8 as shown above) clearly illustrates the procedure concerning all religious concerns and at no point does it state that religious services can be indefinitely suspended due to unconstitutionally forced act[s] / provision[s] and or law[s]. The Defendant has unlawfully forced E.C.C.F. and "all" other Federal holding facilities to violate the Constitutional Rights of "all" Federal Detainees by unilaterally causing the unlawful deprivation of the aforementioned Constitutional Rights.

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ... and to petition the Government for a redress of grievances."

As much as an institution is not required to provide clergy, federal jurisprudence does require **access** for clergy to visit an institution to provide religious counseling and services. In *Gittlemacker v. Prasse* 428 F.2d 1 (3d Cir. 1970), the inherent difficulty in applying First Amendment religious freedom to prisoners is pointed out: "*The requirement that a state interpose no unreasonable barriers to the free exercise of a prisoners religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every prisoner with a clergyman or religious services of his choice. It is one thing to provide facilities for worship and **the opportunity for any clergy to visit the institution**.*"

Throughout the ECCF Covid19 lockdown response, detainees have had no access to clergy for religious services.



In *Cooper v. Pate*, 382 F.2d 518 (7th Cir. 1967), the court allowed prison officials to restrict the religious freedom of certain individuals where the officials showed that such free exercise had been abused at a prior time, but held that a complete ban on religious services was discrimination. No such abuse has been sustained by ECCF detainees, yet they have no access to clergy or religious services due to the Covid19 restrictions.

Congress enacted the Religious Land Use and **Institutionalized Persons Act** (RLUIPA) (42 U.S.C. 2000cc-1(a)), in response to the Supreme Courts holding in *City of Boerne v. Flores* 521 U.S. 507 (1997). The statute provides: "*No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition*

*of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2)  is the least restrictive means of furthering that compelling governmental interest."*

The ECCF Covid19 lockdown creates for detainees a lack of access to clergy along with no access to religious services, which creates a clear violation of the 1st Amendment.  As per the ruling in **Roman Catholic Diocese of Brooklyn v. Cuomo**, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for clergy visits.

## Extremely Limited or non-existent Access to Medical Care

Throughout the ECCF lockdown period, medical staff has been extremely limited, including dentists, orthopedic doctors, optometry services and more.  This has caused extensive issues causing deteriorating health conditions for detainees.



In *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) the Fifth Circuit Court of Appeals reviewed the medical treatment that was available at the Mississippi State Penitentiary. With more than 1,800 prisoners, the prison administration relied upon one full-time physician, several prisoner assistants, and a substandard hospital to provide medical care. The court ruled that the services and facilities were inadequate and ordered the prison administration to *"(1) employ such additional medical personnel as necessary so that the prisons medical staff would consist of at least three full-time physicians, one of which must be a psychiatrist and another the prisons chief medical officer, two full-time dentists, two full-time trained physicians assistants, six full-time registered or licensed practical nurses, one medical records librarian, and two medical clerical personnel, and to obtain the consultant services of a radiologist and a pharmacist; (2) comply with the general standards of the American Correctional Association relating to medical services for prisoners."*

Similarly, ECCF has had extremely limited medical access throughout the Covid19 lockdown.  There are thousands of medical requests at ECCF that has not been responded to in any way, due to lack of access to medical personnel.  As per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, guards daily access and other entrants can be used for medical personnel to enter the jail.

Of

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | Defendants |
|---|---|
| **OSCAR PALMER** | **CIVIL ACTION** |
| **Plaintiff** | Case #: _____ |
| **V.** | |
| **UNITED STATES OF AMERICA** | **CONSTITUTIONAL CHALLENGE** |
| **UNITED STATES MARSHALS SERV.** | |
| **U.S. DIST COURT, SOUTHERN DISTRICT OF NY** | |
| **CHIEF HON. COLLEEN MCMAHON** | |
| **U.S. DEPARTMENT OF JUSTICE** | |
| **NJ GOVERNOR PHIL MURPHY** | |
| **NY GOVERNOR ANDREW CUOMO** | |
| **COUNTY OF ESSEX, NJ** | |
| **DIRECTOR ALFARO ORTIZ** | |
| **WARDEN GUY CIRELLO** | |
| **CFG MEDICAL SERVICES** | |

Plaintiff, **OSCAR PALMER**, files this Constitutional Challenge pursuant to Federal Rules of Civil Procedure Rule 5.1 and requests certification by the court pursuant to 18 U.S.C.S. § 2403. This constitutional Challenge to the Speedy Trial Act Statue 18 U.S.C.S. 3161(h), as it is being applied to the "Standing Orders" in response to Covid-19 to take away speedy trial guarantees of the Sixth Amendment and the Speedy Trial Act, 18 U.S.C.S. 3161(h) is being applied Unconstitutionally. In Support of this Constitutional Challenge is my Civil Rights Complaint Case No: _____

SIGNED:   x _Oscar Palmer_____   DATE: _5/7/21____

    OSCAR PALMER

OSCAR PALMER #207584249
354 DOREMUS AVE
NEWARK, N.J 07105



CERTIFIED MAIL®

7020 1290 0001 8021 5721



UNITED STATES POSTAGE
PITNEY BOWES
02 1P                    $ 008.45⁰
0000807824    MAY 10 2021
MAILED FROM ZIP CODE 07105

RECEIVED
SDNY PRO SE OFFICE
2021 MAY 17  AM 10: 17

TO: COURT CLERK OF FEDERAL SOUTHERN DIST. SUPREME COURT
500 PEARL STREET
NEW YORK, N.Y 10007



RECEIVED
MAY 14 2021
CLERK'S OFFICE
S.D.N.Y.

USM P3
SDNY

Pro Se JKR